FILED
RICHARD W. NAGEL
CLERK OF COURT

2021 FEB 25  PH 5: 13

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CASE NO. 1:20-CR-074 |
| | : | |
| v. | : | JUDGE MICHAEL R. BARRETT |
| | : | |
| DARIAS JACKSON, | : | **SECOND SUPERSEDING** |
| | : | **INDICTMENT** |
| JESSICA BROWN, and | : | |
| GREGORY JACKSON, | : | 18 U.S.C. § 2 |
| | : | 18 U.S.C. § 371 |
| Defendants. | : | 18 U.S.C. § 922(g)(1) |
| | : | 18 U.S.C. § 1503 |
| | : | 18 U.S.C. § 1512(b)(2)(A) |
| | : | 18 U.S.C. § 1512(k) |
| | : | 18 U.S.C. § 1623(a) |
| | : | |
| | : | **FORFEITURE ALLEGATIONS** |
| | : | |

**THE GRAND JURY CHARGES:**

*The Defendants*

1.      At times relevant to this Second Superseding Indictment, defendant **DARIAS JACKSON** was on federal supervised release in connection with a 2013 federal felony conviction in *United States v. Darias Jackson*, No. 1:12-CR-095-07, in the Southern District of Ohio.

2.      Defendant **JESSICA BROWN** is **DARIAS JACKSON**'s long-term significant other.

3.      Defendant **GREGORY JACKSON** and **Unindicted Co-Conspirator #1** are two of **DARIAS JACKSON**'s brothers.

4.      As of September 19, 2019, A.W. was a close associate of **DARIAS JACKSON**.

EG

*The Shooting of A.W. on September 19, 2019*

5. On or about September 19, 2019, at approximately 3:09 a.m., victim A.W. was shot several times and hospitalized for several weeks.

6. At approximately 3:30 a.m.—about 20 minutes after A.W. was shot— **DARIAS JACKSON** communicated with **JESSICA BROWN** by telephone.

7. Later that morning, at approximately 7:24 a.m., **JESSICA BROWN** sent a text to a work colleague in which she said: "Good morning, I really have a family emergency I been going through it since 330am. Can you please find someone to come in for me. My name is not on the schedule but my family is really going through some things & I can not stay the whole shift."

8. On or about October 2, 2019, in a double-blind photographic lineup, A.W. identified **DARIAS JACKSON** as the person who had shot him.

*The Initiation of Criminal Proceedings Against DARIAS JACKSON*

9. On or about October 4, 2019, **DARIAS JACKSON** was arrested on state charges relating to the shooting of A.W. On or about the same date, **DARIAS JACKSON**'s federal probation officer in Case No. 1:12-CR-095-07 sought and obtained an arrest warrant for **DARIAS JACKSON** for an alleged violation of **DARIAS JACKSON**'s terms of supervised release relating to the shooting of A.W.

10. On or about October 10, 2019, a Hamilton County grand jury returned a true bill against **DARIAS JACKSON**, charging him with two counts of felonious assault with a firearm specification and one count of possessing a firearm under disability.

*The Scheme to Pay A.W. to Recant His Testimony*

11. By in or about October 2019, and as described in more detail below, the defendants, **DARIAS JACKSON, JESSICA BROWN**, and **GREGORY JACKSON**, and others known and unknown to the grand jury, including **Unindicted Co-Conspirator #1**, had developed a plan to persuade A.W. to recant, in a notarized affidavit, his identification of **DARIAS JACKSON** as the person who had shot A.W. on September 19, 2019. The conspirators' intent in doing so was in part to cause A.W. to withhold testimony, and/or to provide false evidence, in connection with **DARIAS JACKSON**'s pending supervised release proceedings in Case No. 1:12-CR-095-07.

12. On or about October 28, 2019, **DARIAS JACKSON** used another inmate's jail-call PIN to call **JESSICA BROWN** from the jail. On this call, the two discussed plans for **GREGORY JACKSON** and **Unindicted Co-Conspirator #1** to pick up from the office of the defense attorney representing **DARIAS JACKSON** in the state criminal case ("State Defense Attorney #1") the affidavit that the co-conspirators intended for A.W. to sign.

13. On or about October 28, 2019, **DARIAS JACKSON** called **JESSICA BROWN** and told her, in part: "Get with my brother . . . get with my brother and give him something . . . I guess he'll tell you what it is . . . but give him something, and uh . . . ."

14. On or about October 30, 2019, **DARIAS JACKSON** and **GREGORY JACKSON** spoke by phone about obtaining the affidavit from State Defense Attorney #1, finding a notary at the hospital, and doing a "handoff" in a "blind spot."

15. On or about October 30, 2019, **DARIAS JACKSON** placed a call to **JESSICA BROWN** on which he directed **JESSICA BROWN** to "take that ten, right, and give it to my brother."

### *A.W.'s Affidavit Recanting His Identification of DARIAS JACKSON*

16.     On or about October 31, 2019, **Unindicted Co-Conspirator #1** visited A.W.'s hospital room and had A.W. sign the affidavit recanting A.W.'s identification of **DARIAS JACKSON** as the person who had shot him on September 19, 2019. **Unindicted Co-Conspirator #1** also gave A.W. the first of two payments in exchange for A.W.'s recantation of his identification of **DARIAS JACKSON** as the person who had shot him on September 19, 2019.

17.     On or about October 31, 2019, **DARIAS JACKSON** called **GREGORY JACKSON** from the jail. **GREGORY JACKSON** said in part, "Everything got done. [State Defense Attorney #1] got the paperwork." On the same call, **DARIAS JACKSON** and **GREGORY JACKSON** discussed **DARIAS JACKSON**'s federal probation officer, the possibility that A.W.'s affidavit might lead the probation officer to lift a "holder" on **DARIAS JACKSON**, and the timing of a second payment to A.W. During this conversation, **DARIAS JACKSON** and **GREGORY JACKSON** also discussed A.W.'s request for the full payment to be made up front, which **DARIAS JACKSON** characterized as "extorting" him.

18.     On or about November 14, 2019, **DARIAS JACKSON** called **GREGORY JACKSON** and discussed contacting **DARIAS JACKSON**'s then-state defense attorney ("State Defense Attorney #2") and using A.W.'s affidavit to challenge **DARIAS JACKSON**'s state case.

### *Dismissal of the State-Court Case Against DARIAS JACKSON*

19.     On or about December 19, 2019, A.W.'s affidavit was attached as an exhibit to a *Motion to Dismiss/Supplemental Motion to Suppress Identification* in the state-court case charging **DARIAS JACKSON** in connection with the shooting of A.W.

20.     On or about January 8, 2020, A.W. failed to appear in state court in response to a subpoena to testify in the pending case against **DARIAS JACKSON**.

21.     On or about January 8, 2020, the state court dismissed the case against **DARIAS JACKSON**.

### *The Federal Supervised Release Proceeding*

22.     On or about January 23, 2020, a federal court held a preliminary hearing relating to the alleged supervised release violation in Case No. 1:12-CR-095-07. During the hearing, A.W.'s notarized affidavit was presented as evidence that **DARIAS JACKSON** was not the person who shot A.W.

23.     The federal supervised release proceeding remains pending.

### *The Federal Grand Jury Investigation*

24.     On or about July 7, 2020, **JESSICA BROWN** received a subpoena to testify before a federal grand jury investigating a potential violation of 18 U.S.C. § 922(g)(1) (Possession of Ammunition by a Prohibited Person) in connection with the shooting of A.W.

25.     On or about July 7, 2020, after **JESSICA BROWN** received the federal grand jury subpoena, **DARIAS JACKSON** called **JESSICA BROWN** and said in part, over the course of several calls:

> a.  "Tell [the federal agent who served the subpoena] you don't want to talk to them, period."

b. "They're gonna ask you have you seen me [**DARIAS JACKSON**] with a gun before? No."

c. "If there's a question you don't feel comfortable answering, just tell them, 'I don't know.'"

d. "Listen, when you go down there, just tell them you don't want to talk, you don't want to answer no questions, you don't have no representation, you don't want to talk."

26. On or about July 7, 2020, **JESSICA BROWN** told **DARIAS JACKSON**, in part: "I understand what you're saying. I'll just tell them I don't want to talk."

27. On or about July 8, 2020, **JESSICA BROWN** made several materially false statements to the federal grand jury investigating the shooting of A.W., including the statements described in Counts 4, 5, 8, and 9, below.

28. Following her grand jury testimony, on or about July 8, 2020, **JESSICA BROWN** told **DARIAS JACKSON** about her grand jury testimony, assuring **DARIAS JACKSON** that she had not had to "plead the Fifth" because "they were asking stupid shit."

29. On or about July 22, 2020, a federal grand jury indicted **DARIAS JACKSON** for violating 18 U.S.C. § 922(g)(1) (Possession of Ammunition by a Prohibited Person).

*The Conspirators' Continued Communication with A.W. About the Scheme*

30. On or about October 10, 2020, **JESSICA BROWN** exchanged text messages with A.W. about the scheme to pay A.W. to recant his identification of **DARIAS JACKSON** as the person who had shot him. The messages addressed the remaining money to be paid to A.W.

31. Later that same day, A.W. asked **JESSICA BROWN** via text why **DARIAS JACKSON** had not been released from jail "when I sign that paper n got his charges

dismissed." **JESSICA BROWN** informed A.W. by text that the "feds [had] picked up the case."

**COUNT 1**
**(Possession of Ammunition by a Prohibited Person)**

On or about September 19, 2019, in the Southern District of Ohio, the defendant, **DARIAS JACKSON**, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed ammunition, to wit, nine rounds of Winchester 9mm ammunition, and the ammunition was in and affecting commerce.

**In violation of Title 18, United States Code, Sections 2 and 922(g)(1).**

**COUNT 2**
**(Conspiracy to Commit Obstruction of Justice and Perjury)**

32. Paragraphs 25 through 29 of the Second Superseding Indictment are incorporated here.

33. From on or about July 7, 2020, and continuing thereafter through the present, in the Southern District of Ohio, the defendants, **DARIAS JACKSON** and **JESSICA BROWN**, knowingly and willfully conspired and agreed with each other, and with others known and unknown to the grand jury, to:

    a. corruptly influence, obstruct, and impede, and endeavor to corruptly influence, obstruct, and impede, the due administration of justice in the federal grand jury investigating whether violations of Title 18, United States Code, Section 922(g)(1), had been committed by **DARIAS JACKSON**, in violation of Title 18, United States Code, Section 1503; and

b. knowingly and willfully make material false declarations under oath, in violation of Title 18, United States Code, Section 1623.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objects, at least one of the co-conspirators committed at least one of the following overt acts, among others, in the Southern District of Ohio:

34. On or about July 7, 2020, after **JESSICA BROWN** received a federal grand jury subpoena, **DARIAS JACKSON** called **JESSICA BROWN** and said in part, over the course of several calls:

> a. "Tell [the federal agent who served the subpoena] you don't want to talk to them, period."
>
> b. "They're gonna ask you have you seen me [**DARIAS JACKSON**] with a gun before? No."
>
> c. "If there's a question you don't feel comfortable answering, just tell them, 'I don't know.'"
>
> d. "Listen, when you go down there, just tell them you don't want to talk, you don't want to answer no questions, you don't have no representation, you don't want to talk."

35. On or about July 7, 2020, **JESSICA BROWN** told **DARIAS JACKSON**, in part: "I understand what you're saying. I'll just tell them I don't want to talk."

36. On or about July 8, 2020, **JESSICA BROWN** made several materially false statements to the federal grand jury investigating the shooting of A.W., including the statements described in Counts 4, 5, 8, and 9, below.

37. Following her grand jury testimony, on or about July 8, 2020, **JESSICA BROWN** told **DARIAS JACKSON** about her grand jury testimony, assuring **DARIAS JACKSON** that she had not had to "plead the Fifth" because "they were asking stupid shit."

In violation of Title 18, United States Code, Section 371.

## COUNT 3
### (Witness Tampering)

On or about July 7, 2020, in the Southern District of Ohio, the defendant, **DARIAS JACKSON**, did knowingly corruptly persuade **JESSICA BROWN** by telling her how to respond to questions during her grand jury testimony, including instructions not to provide certain information, with the intent to cause and induce **JESSICA BROWN** to withhold testimony from an official proceeding, namely, a federal grand jury investigating whether violations of Title 18, United States Code, Section 922(g)(1), had been committed.

**In violation of Title 18, United States Code, Sections 2 and 1512(b)(2)(A).**

## COUNT 4
### (Perjury)

38.     On or about July 8, 2020, in the Southern District of Ohio, **JESSICA BROWN**, while under oath and testifying in a proceeding before a grand jury sitting in the Southern District of Ohio, knowingly did make a false material declaration, that is to say:

39.     At the time and place aforesaid the grand jury was conducting an investigation to determine whether violations of Title 18, United States Code, Section 922(g)(1), had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations. It was material to the said investigation that the grand jury ascertain the number, type, and identity of **DARIAS JACKSON**'s social media accounts.

40.     At the time and place alleged, **JESSICA BROWN**, appearing as a witness under oath at a proceeding before the grand jury, knowingly made the following declaration

in response to questions with respect to the material matter alleged in the preceding paragraph as follows:

Q:  You mentioned that you don't know Mr. Jackson's social media accounts, is that right?

A:  I said he has some but I don't know his handle.

Q:  You don't think he has a Facebook account?

A:  No. I don't know. I only—I'm not on Facebook. I do Instagram.

Q:  Did Mr. Jackson have a Facebook account?

A:  I don't know.

41.     The aforesaid testimony of **JESSICA BROWN**, as she then and there well knew and believed, was false in that, on or about July 8, 2020, **JESSICA BROWN** knew **DARIAS JACKSON** had a Facebook account.

**In violation of Title 18, United States Code, Sections 2 and 1623(a).**

## COUNT 5
### (Perjury)

42.     On or about July 8, 2020, in the Southern District of Ohio, **JESSICA BROWN**, while under oath and testifying in a proceeding before a grand jury sitting in the Southern District of Ohio, knowingly did make a false material declaration, that is to say:

43.     At the time and place aforesaid the grand jury was conducting an investigation to determine whether violations of Title 18, United States Code, Section 922(g)(1) had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations. It was material to the said

investigation that the grand jury ascertain what cellular phone devices and phone numbers belonged to or were used by **DARIAS JACKSON**.

44.	At the time and place alleged, **JESSICA BROWN,** appearing as a witness under oath at a proceeding before the grand jury, knowingly made the following declaration in response to questions with respect to the material matter alleged in the preceding paragraph as follows:

> Q:	Now, what about Mr. Jackson's phone number, do you know what it is?
>
> A:	It's 513-212-5587 I believe.
>
> Q:	How long has he had that phone number?
>
> A:	I have no idea.
>
> Q:	As long as you can remember?
>
> A:	I guess you could say that but I don't know. I don't know how long I had my phone.
>
> Q:	Do you remember in the last year or so changing a phone number associated with him in your contacts or anything like that?
>
> A:	No.
>
> Q:	Do you have any other phone numbers that you used for Mr. Jackson?
>
> A:	No.
>
> Q:	Have you ever seen him using a second phone?
>
> A:	No.
>
> Q:	Are you aware of any other phone numbers that people might use to contact him?
>
> A:	No.

45.     The aforesaid testimony of **JESSICA BROWN**, as she then and there well knew and believed, was false in that, on or about July 8, 2020, **JESSICA BROWN** knew **DARIAS JACKSON** had more than one phone and more than one phone number.

**In violation of Title 18, United States Code, Sections 2 and 1623(a).**

## COUNT 6
### (Conspiracy to Tamper with a Witness)

46.     Paragraphs 1 through 24 and 31 through 32 of the Second Superseding Indictment are incorporated here.

From in or about October 2019, and continuing thereafter through the present, in the Southern District of Ohio, the defendants, **DARIAS JACKSON, JESSICA BROWN,** and **GREGORY JACKSON,** knowingly and willfully conspired and agreed with each other, and with others known and unknown to the grand jury, including **Unindicted Co-Conspirator #1,** to corruptly persuade A.W. by paying A.W. money in exchange for A.W. signing an affidavit recanting his identification of **DARIAS JACKSON** as the person who shot A.W. on September 19, 2019, with the intent to cause and induce A.W. to withhold testimony from an official proceeding, namely, *United States v. Darias Jackson*, No. 1:12-CR-095-07, in the U.S. District Court for the Southern District of Ohio.

**In violation of Title 18, United States Code, Sections 2, 1512(b)(2)(A), and 1512(k).**

## COUNT 7
### (Witness Tampering)

On or about October 31, 2019, in the Southern District of Ohio, the defendants, **DARIAS JACKSON, GREGORY JACKSON,** and **JESSICA BROWN** did knowingly corruptly persuade A.W. by paying A.W. money in exchange for A.W. signing an affidavit

Page **12** of **17**

recanting his identification of **DARIAS JACKSON** as the person who shot A.W. on September 19, 2019, with the intent to cause and induce A.W. to withhold testimony from an official proceeding, namely, *United States v. Darias Jackson*, No. 1:12-CR-095-07, in the U.S. District Court for the Southern District of Ohio.

**In violation of Title 18, United States Code, Sections 2 and 1512(b)(2)(A).**

## COUNT 8
### (Perjury)

47.     On or about July 8, 2020, in the Southern District of Ohio, **JESSICA BROWN**, while under oath and testifying in a proceeding before a grand jury sitting in the Southern District of Ohio, knowingly did make a false material declaration, that is to say:

48.     At the time and place aforesaid the grand jury was conducting an investigation to determine whether violations of Title 18, United States Code, Section 922(g)(1), had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations. It was material to the said investigation that the grand jury ascertain the identity of **DARIAS JACKSON**'s close associates, including his siblings.

49.     At the time and place alleged, **JESSICA BROWN,** appearing as a witness under oath at a proceeding before the grand jury, knowingly made the following declaration in response to questions with respect to the material matter alleged in the preceding paragraph as follows:

> Q:     Do you know Mr. Jackson's immediate family?
>
> A:     Like mother?
>
> Q:     Yes.

A: Yes, I know his mother or I have seen his dad sometimes.

[….]

Q: What about any siblings or cousins for Mr. Jackson?

A: No.

[….]

Q: You are sure you don't know any of Mr. Jackson's siblings' names?

A: I know he has three brothers. I know one name is Greg.

Q: Have you ever met any of his brothers?

A: Greg.

Q: Greg?

A: Yes.

Q: Does he live in Cincinnati?

A: Cincinnati, yes.

Q: What about the other two brothers, have you met them?

A: No.

Q: Do they live in Cincinnati?

A: I don't know.

50. The aforesaid testimony of **JESSICA BROWN**, as she then and there well knew and believed, was false in that, on or about July 8, 2020, **JESSICA BROWN** knew, and had met, **DARIAS JACKSON**'s sibling **Unindicted Co-Conspirator #1**.

**In violation of Title 18, United States Code, Sections 2 and 1623(a).**

## COUNT 9
### (Perjury)

51.     On or about July 8, 2020, in the Southern District of Ohio, **JESSICA BROWN**, while under oath and testifying in a proceeding before a grand jury sitting in the Southern District of Ohio, knowingly did make a false material declaration, that is to say:

52.     At the time and place aforesaid the grand jury was conducting an investigation to determine whether violations of Title 18, United States Code, Section 922(g)(1), had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations. It was material to the said investigation that the grand jury ascertain the number, type, and identity of **JESSICA BROWN**'s social media accounts.

53.     At the time and place alleged, **JESSICA BROWN,** appearing as a witness under oath at a proceeding before the grand jury, knowingly made the following declaration in response to questions with respect to the material matter alleged in the preceding paragraph as follows:

Q:     Do you have any social media accounts?

A:     No. Well, Instagram.

[....]

Q:     Does [Mr. Jackson] have any social media accounts?

A:     I know Instagram like me.

[....]

Q:     You mentioned that you don't know Mr. Jackson's social media accounts, is that right?

A:     I said he has some but I don't know his handle.

Q:     You don't think he has a Facebook account?

A:     No. I don't know. I only—I'm not on Facebook. I do Instagram.

54.     The aforesaid testimony of **JESSICA BROWN**, as she then and there well knew and believed, was false in that, on or about July 8, 2020, **JESSICA BROWN** knew she had a Facebook account.

**In violation of Title 18, United States Code, Sections 2 and 1623(a).**

## FORFEITURE ALLEGATION 1

Upon conviction of the offense set forth in Count 1 of this Second Superseding Indictment, the defendant, **DARIAS JACKSON**, shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearm and ammunition involved in or used in the commission of the offense.

## FORFEITURE ALLEGATION 2

Upon conviction of any of the offenses set forth in Counts 6 and 7 of this Second Superseding Indictment, the defendants, **DARIAS JACKSON**, **JESSICA BROWN**, and **GREGORY JACKSON**, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation(s).

## SUBSTITUTE ASSETS

If any of the property described in Forfeiture Allegation 2, as a result of any act or omission of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendants, up to the value of the property described above.

A TRUE BILL.

S/FOREPERSON

GRAND JURY FOREPERSON

DAVID M. DEVILLERS
UNITED STATES ATTORNEY

JULIE D. GARCIA
ASSISTANT UNITED STATES ATTORNEY
KELLY K. ROSSI
SPECIAL ASSISTANT UNITED STATES ATTORNEY