1      UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF OHIO
2        WESTERN DIVISION
         - - -
3 UNITED STATES OF AMERICA,  . Case Number 1:20-cr-74
           .
4     Plaintiff,  .
           . *Status Hearing*
5   - v -     .
           .
6 DARIAS JACKSON, et al.,  . Monday, October 14, 2021
           . 2:30 p.m.
7     Defendants.  . Cincinnati, Ohio.
 . . . . . . . . . . . . . .
8
      TRANSCRIPT OF PROCEEDINGS
9   BEFORE THE HONORABLE MICHAEL R. BARRETT

10 APPEARANCES:

11 For the Plaintiff:

12 KELLY K. ROSSI, ESQ.
 JULIE D. GARCIA, ESQ.
13 United States Attorney's Office
 221 East Fourth Street, Suite 400
14 Cincinnati, Ohio  45202

15 For the Defendant Darias Jackson:

16 RAVERT J. CLARK, ESQ.  JODIE DREES GANOTE, ESQ.
 114 East Eighth Street  215 East Ninth Street
17 Cincinnati, Ohio  45202  Cincinnati, Ohio  45202

18 For the Defendant Jessica Brown:

19 ZENAIDA R. LOCKARD, ESQ.
 Federal Public Defender's Office
20 200 East Fifth Street, Suite 350
 Cincinnati, Ohio  45202
21

 For the Defendant Gregory Jackson:
22

 STEPHANIE KESSLER, ESQ.
23 455 Delta Avenue, Suite 105
 Cincinnati, Ohio 45226
24

 Law Clerk:   Lindsay Littleton, Esq.
25 Courtroom Deputy: Krista Zeller
 Court Reporter:  Maryann T. Maffia, RDR

```
 1                    P R O C E E D I N G S
 2        (Before the Court at 2:30 p.m.  Defendants Darias Jackson
 3   and Jessica Brown present.)
 4             COURTROOM DEPUTY:  Before the Court is U.S. District
 5   Court Case 1:20-cr-74:  United States of America versus Darias
 6   Jackson, et al.
 7             We are here today for an in-person status conference.
 8             THE COURT:  Okay.  So I think we had a couple of
 9   pieces of business we were going to try to do today.  Before I
10   do that, let's have counsel enter their appearances for the
11   record, please.
12             MS. ROSSI:  Good afternoon, Your Honor.  Kelly Rossi
13   and Julie Garcia for the government.
14             MR. CLARK:  Good afternoon, Judge.  Jay Clark for
15   Darias Jackson.
16             MS. GANOTE:  Good afternoon, Your Honor.  Jodie Drees
17   Ganote for Darias Jackson.
18             MS. LOCKARD:  Good afternoon, Your Honor.  Zenaida
19   Lockard on behalf of Miss Brown, who is seated in the gallery
20   behind me.
21             THE COURT:  Okay.  Wait, who is Miss Brown?
22             How you doing, Jessica?
23             DEFENDANT BROWN:  I'm good.
24             THE COURT:  Okay.
25             MS. KESSLER:  Good afternoon, Your Honor.  Stephanie
```

```
 1    Kessler for Gregory Jackson, who is not present today.
 2              THE COURT:  Right.  Okay.  So Greg Jackson was not
 3    brought in today, but I'm wondering if part of today's
 4    proceeding is contemplated as it relates to the Plea Agreement
 5    that we can go forward with.  I don't see any problems, right?
 6    Yes?  No?
 7              MS. KESSLER:  I don't see any problems, Your Honor.
 8              THE COURT:  And if we get to something involving Greg
 9    specifically about that, we can, you know, separate that one
10    out, I think.  I don't know.
11              MS. ROSSI:  Your Honor, if I may?
12              THE COURT:  Yes.
13              MS. ROSSI:  I apologize.  I do think that we need to
14    wait for the Lafler hearing until Mr. Gregory Jackson is
15    present if the Court was planning to address that issue today.
16    I'm not sure.
17              THE COURT:  Well, can't we do it one defendant at a
18    time?
19              MS. ROSSI:  Because it's a group plea offer, I'm not
20    sure if it would be best to have everybody present for the
21    record, but I defer to the Court.  I just know that it was a
22    group plea, so it was all contingent on each other's
23    acceptance.
24    (Pause in proceedings.)
25              MS. ROSSI:  We're comfortable proceeding with the two
```

1  defendants who are here if the Court is.  I just wanted to

2  make it clear it was a group plea offer.

3  THE COURT:  Well, I mean -- and correct me if I'm

4  wrong, but my understanding is is that basically Darias is the

5  linchpin to this agreement.  I mean, we can talk to the other

6  folks, to Zenaida and Stephanie about that, but my

7  understanding is one the concerns was that Darias was not

8  fully apprised of what he was facing, what the Plea Agreement

9  was, and I think whether -- I think the whole thing hinges on

10  whether he says yes or no.

11  Right or wrong?

12  MS. ROSSI:  The Court is correct that the group plea

13  is contingent on each defendant's acceptance.  So if

14  Mr. Darias Jackson says no to the plea, then the plea is off

15  the table for all of the defendants.

16  THE COURT:  Right.  So it's not Jessica, then Greg,

17  then Darias; it's Darias, then Jessica and then Greg.  Right?

18  So we can talk --

19  Jay, do you have any problem with that?

20  MR. CLARK:  No, sir.

21  THE COURT:  All right.

22  So Julie or Kelly, lay out what you think is

23  important to be conveyed to Mr. Jackson at this time as it

24  relates to the offer that's on the table for him.

25  MS. ROSSI:  Yes, Your Honor.  As the Court is aware,

1   the United States filed a motion for a *Lafler* hearing on

2   September 16th of 2021 which memorialized the group plea offer

3   that was conveyed to each of the defendants in this matter.

4           The group plea was as follows:

5           That Mr. Darias Jackson would plead guilty to the

6   Second Superseding Indictment in a Rule 11(c)(1)(C) plea, with

7   a range of imprisonment of 15 to 22 years.  This plea would

8   also resolve any state liability that he has in Ohio in

9   connection with the shooting of A.W. on September 19th of

10  2019.

11          Miss Brown's plea offer is that she would plead

12  guilty to a Superseding Information in a Rule 11(c)(1)(A) plea

13  to one count of being an accessory after the fact to a

14  violation of 18 U.S.C. Section 201(c)(3), which would be a

15  misdemeanor, and the government would recommend a term of

16  probation for Miss Brown.

17          Finally, Mr. Gregory Jackson's plea offer is that

18  Mr. Jackson would plead guilty to the Second Superseding

19  Indictment in a Rule 11(c)(1)(A) plea, and that the government

20  would recommend a term of probation.

21          THE COURT:  Okay.  So let's focus on Darias first.

22          So Darias --

23          And Jay, you can jump in when you're ready.

24          So there are a number of things in the Plea

25  Agreement, forfeiture probably, things like that, but the most

1  important thing as it affects you is probably the potential

2  outcome of the case.  As I explain to people prior to taking a

3  plea, under the Sentencing Reform Act of 1984, Congress

4  compiled means and methods for determining appropriate

5  sentences in criminal cases.  The way they do that is every

6  single federal statute has what's called a Base Offense Level.

7  Then they look at things that could make it more severe.  In a

8  conspiracy, it's usually are you the main person or not the

9  main person.  There's a number of things like that.  In this

10  case, there's physical harm alleged.  There is a number of

11  things that get involved in that.

12       In any event, after they've gone through your

13  particular situation, which is separate than your brother's or

14  Jessica's, they go through your situation, they put together

15  what's called an Adjusted Offense Level.  That's expressed by

16  a number.  Then they look at your criminal history.  I'm not

17  sure what that is, but I know you're on SR to me, so you've

18  got something.  I don't know where it would be, but I'm going

19  to speculate it's higher than a I or a II, but I don't know

20  how high.  It goes up to VI.

21       So there is a chart, and I'm pretty confident you've

22  probably seen the chart, where the Adjusted Offense Level is

23  on one side and the Criminal History is on another side.

24  Those intersect somewhere on the guidelines chart.  At that

25  point, there is a sentence for judges to consider expressed in

1   months on the low end and months on the high end.   Okay?

2           So up until about ten years ago, if the Probation

3   Department did that calculation correctly, I would have been

4   obligated to impose a sentence somewhere in a correctly

5   calculated range.  Now the Supreme Court says I can look at

6   other factors.  We generally call those the 18 U.S.C. 3553

7   factors, but anything else that comes to the attention to me

8   either through you and your lawyers or through the United

9   States.  At the end of the day, I typically have a fair amount

10  of discretion.

11          What's been described in your situation, though, is

12  what's called a (c)(1)(C) plea, which means, if you would

13  agree to it, that means you and your lawyer and the government

14  have agreed to a range of a sentence anywhere from 15 to 22.

15          Now, that is an agreed upon level, but it's still in

16  the form of a recommendation, which means at the end of the

17  day if the presentence investigation came back for whatever

18  reason, I could -- for whatever reason, I could say I do not

19  approve this agreed upon sentence.  I could then reject it,

20  and you could either then take your shot and say "Well, okay,

21  go ahead, I'm still going to go with the plea" or you could be

22  back in a not guilty stage.

23          But the 15 to 22 years that's contained in

24  government's motion 116, and I guess in the Plea Agreement

25  that was tendered to you, that is a recommendation.  But the

```
 1    lawyers in this room would tell you that I have never failed
 2    to follow a recommendation that's made to me, but I don't have
 3    to.  Okay?
 4             DEFENDANT DARIAS JACKSON:  Yes.
 5             THE COURT:  And also in this deal there's obviously
 6    seven years of discretion, which would be saying "Okay, Judge,
 7    I'm going to let you decide" if you said yes.  You know, I've
 8    got a fair amount of discretion.  I want you to know all
 9    that's playing.  Okay?
10             DEFENDANT DARIAS JACKSON:  Uh-huh.
11             THE COURT:  All right.
12             Any other important things in the Plea Agreement as
13    it relates to Darias?
14             MS. ROSSI:  Just one thing, Your Honor.  Just so the
15    record is clear, the government's plea offer to that range is
16    within the contemplated sentencing guideline range that we've
17    estimated and that we've spoke with Probation about, so the
18    plea offer does incorporate what we believe will be
19    Mr. Jackson's guidelines.
20             THE COURT:  Okay.  Well, I'll just be quiet on that.
21             All right.  So Jay, I don't want to get into any
22    attorney-client privilege information, obviously, but I do
23    want to know if there's any questions that you or Darias have
24    that I'm allowed to answer or what your feeling is as it
25    relates to Darias saying yes or no to this particular offer
```

1    that's on the table.

2          And Darias, you can speak freely, but I don't want

3    you to talk about conversations you had with Jay or the facts

4    of the case because we are on the record.  Okay?  Fair enough?

5          DEFENDANT DARIAS JACKSON:  Okay.

6          THE COURT:  Okay.

7          So Jay, any thoughts?

8          MR. CLARK:  Judge, I guess just so it's clear for the

9    record, I did communicate the government's plea offer to

10   Darias.  I think we talked about it twice, I know, maybe more

11   than that in person over different visits.  I conveyed to him

12   the all-or-nothing nature of it in terms of if he did not

13   accept the plea, then his girl and his brother would not be

14   allowed to take the plea even if they wanted it.

15         I think the issue for Darias is my calculation of the

16   guidelines is very different than the government's, and he is

17   not willing to plead to the range, I think he would tell you,

18   and I think he does want to address you.

19         Under the Plea Agreement, he would have to plead to

20   all counts of the Indictment with the agreed range.  He

21   authorized me to make a counteroffer of an open plea to the

22   same counts and leave it to the Court to determine the range

23   with Probation's report.

24         So in terms of the purposes of the *Lafler* hearing, I

25   think -- I did communicate to Darias.  I'd like him to confirm

1  that just so we don't have that issue anymore, but I think

2  that's where we are in terms of the plea.

3           THE COURT:  I'm not sure I want to or should get into

4  it.  Is there a problem with me inquiring as to how big the

5  discrepancy is between the two calculations?

6           MS. ROSSI:  Your Honor, I should clarify that our

7  plea offer of 15 to 22 years includes what we believe his

8  guidelines range will be.  We sent Mr. Darias Jackson's

9  counsel an e-mail explaining how we came to our conclusion

10  about the guidelines and explained that we consulted with

11  Probation.  I am not aware of how Mr. Clark's guidelines

12  calculations differs from ours.

13           THE COURT:  Okay.  And I'm not even sure I should

14  even dig into that.

15           MR. CLARK:  Understood.

16           THE COURT:  Well, all right.

17           MR. CLARK:  My calculation is less.  I've done them

18  three times separated by time to come back to it.  Each time I

19  do them, I put him in Category IV with range of 110 to 137.

20  So when you see the government's offer of 188 to two, two

21  plus, 230 plus, that's just too big a difference for Darias to

22  accept.  That's why he was willing to, I'll say, split the

23  baby, enter a plea open, and whatever the guidelines are the

24  guidelines are.

25           THE COURT:  Well, you're allowed to enter a plea,

1    Jay.

2          MR. CLARK:  And that's -- the problem with that is,

3    if he were to plead guilty as charged, which is, in effect,

4    what he would be doing, the other two defendants would not get

5    the plea offers that were made to them.

6          THE COURT:  All right.  And before I ask Darias if he

7    wants to say anything, have you counseled him on what he

8    should or shouldn't say at this juncture?

9          MR. CLARK:  I told him that he could acknowledge the

10   communications we've had about the plea offer being made to

11   him so that you were satisfied that I took care of that

12   obligation and not disclose what I would say would be

13   strategic concerns or issues like that.

14         THE COURT:  Okay.

15         So Darias, do you understand what the offer is to

16   you, right?

17         DEFENDANT DARIAS JACKSON:  Yes.

18         THE COURT:  Well, a little unusual, but kind of give

19   me your thoughts.  Can you -- are you okay taking the mask

20   down?  You can keep it up if you're nervous about COVID, but

21   it helps Maryann.

22         DEFENDANT DARIAS JACKSON:  I just feel like it's

23   unfair.  They won't let me just plea to my, to the Indictment.

24   How do you trying to force me to take a plea of a range that's

25   well over my guideline and not let them get what they going to

1    get?  I don't understand it.

2          THE COURT:  Okay.  All right.  Well, let's hold off

3    on you right now, okay?  Fair enough?

4          DEFENDANT DARIAS JACKSON:  Mm-hmm.

5          THE COURT:  All right.

6          So Jay, you and Darias are completely able to enter a

7    plea to the Indictment, as you know.

8          MR. CLARK:  Understood.  Understood.

9          THE COURT:  Okay.

10         MR. CLARK:  And we have talked about that.  I've

11   communicated that to the government as part of our ongoing

12   discussions, and they indicated that were we to do that, that

13   would be the same as rejecting their offer, and that the plea

14   offers to the other two co-defendants would not be extended.

15        THE COURT:  All right.

16        So Zenaida, where do you and Jessica stand in light

17   of the fact that Darias indicates he is willing to enter an

18   open plea but I guess the Plea Agreement would be off the

19   table as it relates to you guys then?

20        MS. LOCKARD:  Your Honor, I don't have any indication

21   of what Miss Brown's offer could potentially be other than

22   that if Mr. Jackson does not accept the offer as it's

23   articulated in Document 116, then Miss Brown's offer is off

24   the table.

25        I have spoken extensively with the government about

1   my concerns as they relate to Miss Brown and other potential

2   offers, and we have been unable to reach a resolution assuming

3   that Mr. Jackson rejects this particular offer.

4           As the offer is outlined in Document 116, I have

5   discussed that particular offer with my client, discussed with

6   her the all-or-one nature of the offer; and, as she sits, she

7   would be willing to accept the offer as it's articulated in

8   Document 116.  But my understanding from the government is

9   that because Mr. Jackson has rejected it, it is no longer

10  available to her.

11          If I am incorrect, then the government can certainly

12  let me know that, but that is my understanding of where we

13  sit.

14          THE COURT:  Okay.

15          Stephanie, understanding that we may have to repeat

16  part of this with Greg present when we talk about his bond

17  whenever we do that, what is your understanding?

18          MS. KESSLER:  My client is in the same boat as

19  Miss Brown.  We have not had a written Plea Agreement provided

20  to or for Mr. Gregory Jackson because it's our understanding

21  a written agreement will not be made to my client unless and

22  until Darias Jackson accepted his offer pursuant to Document

23  116.

24          Now, my client has received the *Lafler* motion filed

25  by the government.  We've discussed it.  Based on the one or

1  two sentences that pertain directly to Greg, he would be

2  willing to contemplate in the future a plea as discussed in

3  Document Number 116.

4        THE COURT:  Guys, what is your position if Darias

5  just wants to plead guilty to the Indictment?

6        MS. GARCIA:  Your Honor, if I may speak for the

7  government?

8        THE COURT:  Sure.

9        MS. GARCIA:  A few points on that question.  First,

10  as the Court noted, Mr. Darias Jackson is welcome to plead

11  open to the Indictment at any time he wants.  That would not

12  be an acceptance of the offer that the government has made.

13  Therefore, the deals that the government has offered to his

14  co-defendants would not be on the table anymore because the

15  specific offer that was made is the one outlined in the motion

16  for the *Lafler* hearing.

17        I want to clarify a few things about that offer.

18        So, first, as the Court is aware from the Second

19  Superseding Indictment, Mr. Darias Jackson was previously

20  charged in the state court, Hamilton County Court, with

21  felonious assault of the victim.  The obstruction of justice

22  of witness tampering that's outlined in that Second

23  Superseding Indictment led to the state court dropping those

24  charges without prejudice.  The proposed Plea Agreement

25  would also wrap up Darias Jackson's liability on that state

1   court case where, as you can imagine, they would be interested

2   in finishing what they started, as you can imagine, given the

3   circumstances under which that case was dropped.  That is an

4   important thing that I felt was also conveyed to the

5   defendants.

6         The second issue in terms of the defendant's

7   statement that the other defendants should just be able to get

8   their offers even if he doesn't accept the offer that the

9   government has made, the government wants to make very clear

10   that, under those two offers as to the other defendants, the

11   government was willing to recommend probation even though they

12   both have guidelines calculations that are in the range of

13   several years.  That is because, as we indicated in our motion

14   -- or in our opposition to Mr. Gregory Jackson's bond motion,

15   our primary target is Darias Jackson, the person who shot

16   someone many times and almost killed him.

17         So if he accepts responsibility and under the terms

18   of our Plea Agreement pleads guilty to everything in the

19   Indictment, we are willing to reduce substantially the

20   recommendation that we would otherwise make for those two

21   co-defendants assuming that all three accept responsibility

22   for what happened, including the payoffs to the victim in this

23   case.

24         If he's not willing to accept it under those terms,

25   well, those other two defendants, we're going to be

1    recommending a guidelines sentence because that's what's

2    appropriate in this case otherwise.

3            So that's the government's perspective on why just

4    pleading open doesn't justify still extending those same

5    offers to the co-defendants.

6            THE COURT:  Okay.  Well, I guess the main question is

7    does Darias understand that if he either pled to this charge

8    or was convicted of this charge he still has exposure in the

9    state court.  That's kind of what I'm being told, and I guess

10   that is the situation, right?

11           DEFENDANT DARIAS JACKSON:  Yeah, I understand.

12           THE COURT:  Until the statute of limitation runs,

13   whenever that is, six years or something.

14           DEFENDANT DARIAS JACKSON:  Yes, I understand it.

15           THE COURT:  Okay.

16           MR. CLARK:  Judge, I think Darias's position is

17   exactly what the government just told you.  He's the primary

18   target.  He is willing to plead guilty as charged to all

19   counts, which the government would avoid the necessity of a

20   trial.  Pleading open, it does not wrap up for him any state

21   court responsibility or liability, which, again, is a benefit

22   to the government in this case.  He would, in theory, if they

23   calculated the guidelines correctly, receive the same sentence

24   by pleading open.

25           None of that affects the propriety of a sentence for

1 his co-defendants. He's basically willing to come in and

2 plead guilty, and the only way the government will do that is

3 if he pleads to a certain range of months. I don't think the

4 statements offered by the government justify. And this is, I

5 think, where Darias is, not what I think.

6       THE COURT: Well, let me sort of flip this a little

7 bit, Jay. Is Darias's position regarding an open plea

8 regardless of what the two defendants' ultimate situation is?

9       MR. CLARK: Ask that again? I'm sorry.

10       THE COURT: Is Darias's statement that he's

11 considering an open plea irregardless of whatever happens to

12 the two co-defendants, or is there a plea bargain in reverse

13 that he'll do that if he gets that deal?

14       THE DEFENDANT: I think Darias would plead open if

15 the two co-defendants were to receive the same plea offers

16 that the government wants in exchange for him pleading to the

17 range. I don't know if I answered that clear or not.

18       THE COURT: Well, I mean, I guess what I'm saying is

19 Darias is not prepared to enter an open plea unless the other

20 terms of the agreement are met by the government.

21       MR. CLARK: Correct. And his position is this.

22 He's giving the government more by pleading open --

23       THE COURT: No --

24       MR. CLARK: No, I'm just saying --

25       THE COURT: I know all that.

```
 1            MR. CLARK:  Okay.  That's where we are.
 2            THE COURT:  So if the plea deal is off the table,
 3   then Darias's thoughts about an open plea are likewise off the
 4   table.
 5            MR. CLARK:  Correct.
 6            THE COURT:  Okay.  That makes it more clear, I think.
 7            MR. CLARK:  You got to it much more succinct than I
 8   was.
 9            THE COURT:  Well, no.  I just --
10            MR. CLARK:  That's where we are.
11            THE COURT:  Okay.
12            MR. CLARK:  If I can, just so I put this out there
13   given that we're having a Lafler hearing as relates to Darias,
14   Miss Garcia did call me last week to talk about a possible
15   resolution.  I owed her a phone call.  I didn't call her back
16   last week as I said I would.  We talked earlier today, and she
17   did ask -- made a couple of inquiries that I won't put on the
18   record.
19            I talked to Darias about those, and our position is
20   essentially what we just articulated to the Court.  So the
21   government as a whole did reach out again in an effort to try
22   to resolve this, but it's not where we can get to today.
23            THE COURT:  Okay.  Well, so if that's where we are,
24   then I think we have to set a trial date.
25            Stephanie, I'm not sure -- I mean, we could probably
```

1   -- well, you know what?  We'll repeat this with Greg when we

2   bring him in for the bond hearing.  Okay?

3         But if the deal is the way it is, then Zenaida,

4   you're sort of boxed in.

5         As are you.  Right, Stephanie?

6         MS. KESSLER:  Right.

7         MS. LOCKARD:  Judge, I actually had typed up, and

8   this is just a thought and a suggestion --

9         THE COURT:  Let's do a quick time-out.  Remember, I'm

10   not supposed to -- I'm just doing this because we're trying to

11   put the plea on the record.  I'm not engaging any kind of

12   negotiations.  I'm just asking questions.

13         MS. LOCKARD:  Sure.  But I have a request for the

14   Court, which may be denied.  I think based on the statements

15   made by the government and what I've heard Mr. Clark say and

16   my own calculations, my understanding is that Probation is no

17   longer doing pre-plea calculations because they are basically

18   overburdened with calculations for cases that have actually

19   been resolved.

20         THE COURT:  That's what I thought.

21         MS. LOCKARD:  I have been in contact, at least as

22   relates to Miss Brown, with the United States Sentencing

23   Commission and have received a calculation from them.  When I

24   spoke with them, they basically -- my understanding, having

25   worked other cases with Probation, is that when there are

1   cases where there are difficult-to-resolve guidelines, they go

2   to the Commission and ask the Commission for advice.

3          I do not know if the parties would all jointly be

4   able to go to the Commission for a guideline calculation, but

5   if that could meet some of the government's concerns,

6   Mr. Jackson, as well as our respective clients, I don't know

7   if that would be a way to try to resolve these matters with an

8   agreement.

9          But I did want to throw that out there.  I do have

10  the contact for the direct person that I spoke with at the

11  Sentencing Commission.  I could certainly call her and we

12  could run guideline calculations past her, which is what

13  Probation does when there is a question.  I just don't know if

14  that would meet the government's concerns.

15         THE COURT:  Well, I would have to be out of that

16  conversation.  You guys have heard that discussion, so I don't

17  think you have to answer because that's negotiations.  So you

18  guys can talk about doing that stuff.

19         And Stephanie, where do you end up on this?  We'll

20  have to pick a trial date and see what happens.  Are you okay

21  with picking a trial date without Greg being here?

22         MS. KESSLER:  Yes, Your Honor, we are.

23         THE COURT:  Okay.  What are we thinking in terms of

24  --

25         MR. CLARK:  Your Honor, with respect to a trial --

1        THE COURT:  Okay.  Let me -- just for the record so I

2   don't have to do an extended order, it is clear to me that the

3   offer has been conveyed in its entirety.  It's clear to me

4   that Darias understands the offer in its entirety and that,

5   based upon the way it's set up, Darias is saying he's not

6   going to accept the offer or enter an open plea as it relates

7   to this particular Plea Agreement.

8        Is that a fair enough assessment of where we are?

9        MR. CLARK:  Yes, Judge, it is.

10       THE COURT:  Okay.  So what are your guys' thoughts on

11  trials?

12       MR. CLARK:  Judge, with respect to trial, I've talked

13  to Darias about this over the life of this case, including the

14  last few times we've talked.  I would expect, now that we're

15  at this point, I'll file a notice under Rule 23 waiving his

16  right to a jury trial and let the government either accept

17  that or reject it and let the Court decide if we can proceed

18  by a bench trial.

19       THE COURT:  Okay.  Well, let's -- we don't have to do

20  that -- I guess we should --

21       So when are you thinking about doing that?

22       MR. CLARK:  My understanding is all I have to do is a

23  waiver and a notice, a one-page document.  Hopefully I can get

24  that done this week.

25       THE COURT:  Okay.  And then let's see what the

```
 1    government's response is, and that will determine where the

 2    calendar falls.

 3            Does that sound fair?.

 4            MS. ROSSI:  Yes, Your Honor.  You're saying after

 5    Mr. Clark files his notice and motion, at that point we would

 6    reconvene and set a trial calender?

 7            THE COURT:  Yeah.  I'm not going to set a

 8    three-person jury trial conference or block out that time if

 9    there's going to be a bench trial waiver.

10            But if that's the case and there's no objection,

11    where does that leave you two guys?

12            MS. KESSLER:  It would be a joint motion as far as my

13    client is concerned.

14            MS. LOCKARD:  Your Honor, I would need to discuss

15    that further with Miss Brown.

16            THE COURT:  Okay.  I mean, we might have different

17    wheels spinning here.  So Jay, you'll get that filed, you guys

18    will respond, and then we'll bring everybody back, and let's

19    see where we are.

20            Stephanie, what do you want to do about Greg's bond

21    hearing?  You want to try to work that in this week if we can?

22            MS. KESSLER:  If we can, that would be great.  If we

23    push it towards the back end of the week I'll file a reply,

24    which will hopefully shorten the arguments, if necessary.

25            THE COURT:  Krista and I were looking at some dates.
```

1        COURTROOM DEPUTY:  We were looking at Wednesday.

2        THE COURT:  We did have Wednesday, but that doesn't

3   give you much time.

4        MS. KESSLER:  That's fine.

5        COURTROOM DEPUTY:  We can do it Friday.

6        MS. KESSLER:  I can do Wednesday or Friday, whatever

7   time is better for the Court.

8        THE COURT:  What's the time on Friday?

9        COURTROOM DEPUTY:  We have something set at 10:30 and

10  12:30.  We could do one.

11       THE COURT:  That would give you time to put a reply

12  in.  How does Friday at one o'clock work for a bond hearing?

13       MS. ROSSI:  That's works for the government.

14       THE COURT:  Okay.  And I think all we need for that

15  are Stephanie and Greg, right?  Okay.

16       And then you guys talk about that Sentencing

17  Commission idea among yourselves and figure out what you want

18  to do.  Okay?

19       MR. CLARK:  Yes, sir.  I have a question.  In reading

20  Rule 23, it says, "The defendant waives a jury trial in

21  writing."  The first time I read that, I understood that as I

22  could file the notice or a waiver on Darias's behalf.  Does

23  the Court want a specific jury waiver signed by him?  It could

24  be read both ways.

25       THE COURT:  Well, I think the United States certainly

1   would to consider it, and that would be -- it would helpful.

2         MR. CLARK:  Okay.  What I'll do is I'll file the

3   notice on Rule 23, mail him the waiver and have him sign it,

4   get it back then.  That way he can --

5         THE COURT:  Okay.  You get it filed, they'll respond,

6   and we'll see where we are.

7         Zenaida, you're not bound in.

8         Stephanie, you're not bound in either.

9         But it sounds like if the United States agreed to

10  that or it would a -- at least be a partial joint request.

11  All right.  Okay.

12        Anything else today?

13        MS. ROSSI:  Your Honor, the only other concern the

14  government has is in terms of the Speedy Trial calculation.  I

15  know that we're coming back later this week for Mr. Gregory

16  Jackson and that Mr. Darias Jackson is going to be filing a

17  motion.  I don't know how the Court feels about putting

18  forward an ends of justice through some future date while

19  we're all here together as opposed to when we come back for

20  Mr. Greg Jackson.

21        THE COURT:  Well, how long will it take you guys to

22  respond to whatever Darias and Jay file?

23        MS. ROSSI:  I would say a week, Your Honor, at most,

24  not knowing exactly what it will contain because --

25        THE COURT:  Yeah.  I'm just trying to think.

1          Am I out of town in two weeks or in one week?  I

2     forget.  Oh, no.  I tell you what.  Can we set -- it looks

3     like that trial is going to move, right?  Probably?  So we

4     could do it the week we were supposed to be in trial, which

5     is, what, the week of the 18th or something like that?

6               COURTROOM DEPUTY:  The 15th, November 15th.

7               THE COURT:  Let's pick a circle-back date the week of

8     the 15th to discuss where we are in the trial calendar

9     situation.  I think the ends of justice are satisfied by

10    continuing this matter until that time because based upon

11    Jay's discussion, Zenaida's discussion, perhaps Stephanie's

12    discussion, it sounds like plea negotiations may still be in

13    progress.  So I think that's a valid reason to -- plus the

14    complicated nature of this matter.  That's a valid reason to

15    put on an ends of justice order to sometime that week.

16              So Krista, what do you have?

17              COURTROOM DEPUTY:  Tuesday the 16th at one?

18              THE COURT:  Does that give you guys time to do your

19    stuff back and forth?

20              MR. CLARK:  Is this for me or the bond hearing?

21              THE COURT:  No, not the bond hearing.  The bond

22    hearing is Friday.  This is just come back and see where we

23    are, what the response is to your waiver.

24              MR. CLARK:  I can -- I just had Darias sign the

25    statement "I Darias Jackson waive my right to a jury trial,"

1  so I'll attach that to my notice today and get it filed by the

2  end of the day, so if that helps us in planning time.  It's

3  not as formal as I would like it, but --

4          THE COURT:  Any objections to that?

5          MS. ROSSI:  Your Honor, candidly, I've not done the

6  research on the case law as to what type of knowing and

7  intelligent waiver looks like, so I would actually like a

8  little time to look into it.

9          THE COURT:  So Darias, here's the deal.  It seems

10  like you're comfortable doing this, but okay.  You absolutely

11  have a right to a jury trial.  Okay?  And a jury trial is 12

12  people that hear the evidence.  They're instructed to keep an

13  open mind until the presentation of the case is totally

14  complete.  And Jay, just as he would in a bench trial, but Jay

15  would try to exclude evidence ahead of time that he thought

16  was improper.  He would make objections during the course of

17  the trial.

18          You would have an absolute right not to testify.  The

19  only way the government could ask you any questions would be

20  if you decide to testify, answer Jay's questions first, which

21  gives up your right not to testify, and only then could they

22  do that.

23          At the end of the jury trial, the jury would

24  deliberate and have to reach a unanimous verdict.

25          You have what's called the presumption of innocence

1   which means that they would have to look at you and presume

2   that you are an innocent person throughout the course of the

3   case, and that would stay with you unless and until the

4   government met its burden of proving each and every element

5   beyond a reasonable doubt.  If the jury went back, talked

6   about the case, and decided that the elements have been proven

7   beyond a reasonable doubt, they could find you guilty of one

8   or more counts to the Indictment.

9           So you have an absolute right to have 12 people off

10  the street decide the case.

11          If you are telling me "Judge, I'm willing to waive

12  that right and proceed by a bench trial," then we'll just make

13  note of that on the record and Jay will file the motion if you

14  guys are still on board when he files the motion.

15          So your thoughts, please.

16          DEFENDANT DARIAS JACKSON:  I'm okay with waiving.

17  I'm okay with having a bench trial.

18          THE COURT:  Okay.  I think that's pretty complete.

19     All right.  So when are we coming back?

20          COURTROOM DEPUTY:  It's November 16th at one o'clock.

21          MR. CLARK:  That works for me, Judge.

22          THE COURT:  All right.  We'll circle the wagons and

23  come back in a couple of weeks and see where things are.

24  Okay?

25          In the meantime, Zenaida, if you want to follow up

1   with your idea and get Stephanie and Jay on board, that's

2   fine.

3          MS. LOCKARD:  Your Honor, do you need my client at

4   the hearing on the 16th?

5          THE COURT:  Yeah, because --

6          Jessica, on the 16th if we can't figure stuff out,

7   we'll have to set some kind of a date.  Okay?

8          And you have Stephanie and Greg --

9          Well, it depends on what the government does.  If

10  they say we agree to a bench trial, then Stephanie and Greg

11  sound like they may join in.  I'll want to know where you guys

12  are at that time as well.  Okay?

13         She's nodding her head yes.

14         DEFENDANT BROWN:  I'm all right.

15         THE COURT:  Yeah, we better have everybody back here.

16         MS. LOCKARD:  Okay.  Thank you.

17         THE COURT:  Anything else?

18         MR. CLARK:  Nothing from Mr. Jackson, Judge.

19         THE COURT:  Zenaida?

20         MS. LOCKARD:  No, Your Honor.  Thank you.

21         THE COURT:  Stephanie?

22         MS. KESSLER:  No, Your Honor.  Thank you.

23         THE COURT:  Julie?  Kelly?

24         MS. ROSSI:  No, Your Honor.  Thank you.

25         THE COURT:  Okay.  All right.  Thanks, guys.

```
 1           MS. GARCIA:  Thank you, Judge.

 2           COURTROOM DEPUTY:  This court is adjourned.

 3

 4      (The proceedings concluded at 3:07 p.m.)

 5

 6                C E R T I F I C A T E

 7

 8    I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

 9  THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

10

11  /s/ Maryann T. Maffia  01/11/2022 _ _

12  Maryann T. Maffia, RDR
    Official Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25
```